VOROS, Judge
(concurring):
¶ 43 I concur in the opinion of the court. I write separately only to emphasize what I believe to be the limited role of the so-called Shickles factors in rule 403 analysis.
¶ 44 Our supreme court has clarified that Utah courts are “bound by the text of rule 403.” State v. Lucero, 2014 UT 15, ¶ 32, 328 P.3d 841, abrogated on other grounds by State v. Thornton, 2017 UT 9, 391 P.3d 1016. In contrast, “the Shickles factors were not rooted in the text of the operative rule; they were ‘drawn from’ the McCormick on Evidence treatise.” State v. Rushton, 2017 UT 21, ¶ 53 n.2, 395 P.3d 92 (Lee, Associate *888 Chief J., concurring' in the judgment) (quoting Lucero, 2014 UT 15, ¶ 32, 328 P.3d 841). “And in time [our supreme court was] forced to repudiate the Shickles factors — identifying unforeseen consequences arising from an attempt to formulate factors not rooted in the text of the governing law, and backing away from the Shickles factors and pointing the courts back to rule 403.” Id. Accordingly, “the Shickles factors should not limit the considerations of a court when making a determination of evidence’s admissibility under rule 403.” State v. Cuttler, 2015 UT 95, ¶ 18, 367 P.3d 981. Indeed, the supreme court has now ruled that a district court abuses its discretion “by mechanically applying the Shickles factors.” State v. Lowther, 2017 UT 24, ¶ 47, — P.3d. -.
¶45 However, our supreme court has also recently rejected the idea “that the Shickles factors, taken individually, have no place in a rule 403 analysis. It may very well be appropriate, for example, for a district court to consider the similarities between the crimes in-assessing probative value.” Cuttler, 2016 UT 95, ¶ 19, 367 P.3d 981. Thus,'“we focus our analysis on the text of rule 403 and analyze only those Shickles factors that are relevant to the circumstances of [the present] case.” State v. Reece, 2015 UT 45, ¶ 69, 349 P.3d 712.
¶ 46 But I see no legal relevance in whether a factor is found on the Shickles list. All that matters is that it aids the court in applying the law, i.e., the text of rule 403. One or more of the Shickles factors may sometimes help, but the same can be said of non-Shickles factors, such as “the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way,” Shuffield v. State, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006) (citation and internal quotation marks omitted), and “the extent to which admission of evidence will require trial within trial,” State v. Rollins, 233 W.Va. 715, 760 S.E.2d 529, 551 (2014) (citation and internal quotation marks omitted). And of course our supreme court has proscribed one Shickles factor, “the degree to which the evidence probably will rouse the jury to overmastering hostility.” See State v. Shickles, 760 P.2d 291, 296 (Utah 1988), abrogated by Cuttler, 2015 UT 95, ¶ 20, 367 P.3d 981 (holding that “it is inappropriate for a court to consider the overmastering hostility factor in a rule 403 analysis”). In short, whether a factor is useful to a court in conducting a 403 balancing has everything to do with relevance under the circumstances and nothing to dp. with appearing on the Shickles lists
¶ 47 I believe this is our' supreme court’s approach.- But it appears to me'that this nuanced approach may not be sufficient to drive a stake into the heart of Shickles. Perhaps the time has come to hold that any ■reference to the Shickles factors constitutes reversible error.
¶ 48 I also add this observation:' when a relationship marked by bullying, threats, or violence culminates in an accusation of sexual assault answered by a claim of consent, evidence of that history of abuse will almost always satisfy rules 402, 403, and 404(b). It will almost always be highly probative and almost never be unfairly prejudicial. If our rules of evidence are to reflect the real world, they must recognize that the question of consent must be viewed through the lens of the couple’s entire relationship. And just as a history of consensual sex is relevant to whether a sexual partner consented on a particular occasion, see Utah R. Evid. 412(b)(2), so also is a history of abuse, see State v. Diak, No. 98-2004-CR, 1999 WL 19306, at *5 (Wis. Ot. App. Jan. 20, 1999) (holding the couple’s history of abuse relevant to whether the victim consented to sex). A jury could reasonably conclude that a history of violence elevates an otherwise non-coereive demand for sex to the level of a “threat[ ] to retaliate in the immediate future against the victim” if she refuses to comply. See Utah Code Ann. § 76-5-406(4)(a)(i) (LexisNexis Supp. 2016).
¶ 49 Constitutional law provides a useful analogue. “When a prosecutor seeks to rely upon consent to.justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.” Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Otherwise stated, “Is the confession the product of an essentially free and unconstrained choice by its maker?” Schneckloth v. *889 Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). This question is “to be determined from the totality of all the circumstances.” Id. at 223, 93 S.Ct. 2041. I see no reason why a less robust version of consent should apply in the context of sex crimes.[5]

. I am of course not suggesting that a criminal defendant bears any burden of proving consent in a criminal prosecution; I am suggesting only that the “consent” — whose absence the prosecutor must prove beyond a reasonable doubt— means consent that was the product of a free and unconstrained choice under a totality of the circumstances, including the couple's history.